**COMMONWEALTH of Pennsylvania,**
**Appellee**

v.

**Thomas CAPPELLO, Appellant.**

Superior Court of Pennsylvania.

April 30, 2003.

---

Douglas G. Reichley, Allentown, for appellant.

James B. Martin, Asst. Dist. Atty., Allentown, for the Com., appellee.

Before: DEL SOLE, P.J., JOHNSON and BOWES, JJ.

BOWES, J.:

¶ 1 Appellant, Thomas Cappello, appeals from the order entered on November 5, 2001, denying his petition for post-conviction relief. We affirm.

¶ 2 The underlying offenses occurred as follows. During the early morning hours of June 27, 1999, Allentown Police Officer Allen Todd responded to an automobile collision involving Appellant's vehicle at the intersection of Law and Allen Streets in Allentown, Pennsylvania. Witnesses

had observed Appellant operate his vehicle in the wrong direction on a one-way street. Upon arriving on the scene, Officer Todd detected the odor of alcohol emanating from Appellant and observed that Appellant had difficulty walking. Appellant refused to perform field sobriety tests, and he was unable to provide a valid driver's license. Hence, Officer Todd arrested Appellant for driving under the influence of alcohol, 18 Pa.C.S. § 3731(a)(1); driving without a license, 18 Pa.C.S. § 1501(a); driving in the wrong direction, 18 Pa.C.S. § 3308(b); and careless driving, 18 Pa.C.S. § 3714.

¶ 3 On November 22, 1999, Appellant pleaded guilty to driving under the influence of alcohol, and the trial court imposed judgment of sentence of forty-eight hours to two years less one day imprisonment. After completing the minimum sentence, Appellant was released to the custody of the Lehigh County Adult Probation and Parole Department. Appellant did not file a direct appeal.

¶ 4 On August 31, 2000, Gail Perry, Appellant's paramour, filed a petition against Appellant for protection from abuse ("PFA") based on an incident which occurred earlier that day. Appellant countered by filing a PFA against Ms. Perry. Appellant attended the PFA hearing on September 7, 2000, without the assistance of counsel. The PFA court denied Appellant's motion for a continuance, and after a hearing, it found in favor of Ms. Perry and entered a PFA order against Appellant. Consequently, the PFA court dismissed Appellant's counter petition. At the time of the incident, there were no PFA orders in existence.

¶ 5 Thereafter, on September 26, 2000, the Commonwealth filed a parole violation petition based on the allegations from the August 31, 2000 incident. The petition alleged as follows:

2) The violation(s) committed by the defendant were:

(a) The said defendant did violate condition number four (4) of the conditions governing parole in Lehigh County, in that, the said defendant violated civil laws, [to wit] on about, August 31, 2000, the defendant did abuse, threaten, harass, or stalk Gail Perry and ... on September 7, 2000[,] the defendant, Thomas Cappello, [was] hereby adjudicated to be in Indirect Criminal Contempt.

(b) The said defendant did violate condition number nine (9) of the conditions governing parole in Lehigh County, in that he failed to refrain from overt behavior which threatens or presents a clear and present danger to [himself] or others.

Lehigh County Adult Probation / Parole Violation Petition, 9/22/00.

¶ 6 During the *Gagnon II* parole revocation hearing, on October 12, 2000, a parole officer misstated the facts of the case by indicating that Appellant's conduct during the August 31, 2001 incident violated an **existing** PFA order. Appellant's counsel did not refute the allegations in the petition or attempt to correct the inaccurate testimony. Thereafter, on July 12, 2001, the *Gagnon II* court entered an order finding that Appellant conceded the allegations of the petition and thereby violated the terms of his parole. The court revoked parole and re-imposed the balance of the two-year judgment of sentence entered on November 22, 1999.

¶ 7 Appellant did not file a direct appeal from the July 12, 2001 order. Instead, on August 14, 2001, he filed a *pro se* PCRA petition. On September 20, 2001 appointed counsel filed an amended petition alleging that counsel rendered ineffective assistance during the *Gagnon II* hearing in

allowing the Commonwealth to introduce purportedly inaccurate evidence establishing that Appellant violated parole. After a hearing, the PCRA court dismissed Appellant's amended petition without addressing the merits of the claims therein, concluding that Appellant's petition under 42 Pa. C.S. § 9545(b) was untimely as it was filed beyond one year from the date the original judgment of sentence became final. The PCRA court also held, in the alternative, that pursuant to *Commonwealth v. Grier*, 410 Pa.Super. 284, 599 A.2d 993 (1991), Appellant's petition failed to raise a cognizable claim under 42 Pa.C.S. § 9543(a)(2)(ii). This appeal followed.

¶ 8 On appeal, Appellant raises the following issues:

A. Whether the trial court committed an error of law by finding the Appellant had not timely filed his petition for post-conviction relief within one year of the date of the final judgment, when appellant [sic] filed his petition within one year from the date of judgment which resulted in his incarceration on a parole violation?

B. Whether the trial court committed an error of law when the court found the Appellant had not presented claims that were cognizable under the Post–Conviction Relief Act?

C. Whether the lower court committed an error at law by denying the [a]ppellant an evidentiary hearing on the allegations of the [a]ppellant's petition for post-conviction relief?

D. Whether the trial court committed an error at law when it did not find counsel at the [a]ppellant's *Gagnon II* hearing was ineffective for failing to correct the probation officer's factually inaccurate allegation that Appellant had been convicted of Indirect Criminal Contempt for violation of a Protection From Abuse order?

Appellant's brief at 7. We address the issues *seriatim.*

¶ 9 We review the PCRA court's grant or denial of post-conviction relief mindful of whether the evidence of record supports its factual determinations and whether its rulings are free of legal error. *Commonwealth v. Davis*, 816 A.2d 1129 (Pa.Super.2003).

■ ¶ 10 Appellant's first issue concerns the timeliness of his PCRA petition. The PCRA court determined that Appellant's petition was untimely in that it was filed eighteen months after the entry of the original judgment of sentence. However, for the following reasons, we conclude that Appellant's petition was timely filed, and we address the merits of the appeal.

■ ¶ 11 Pursuant to 42 Pa.C.S. § 9545(b), "Any petition under this subchapter, including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final. . . ." The PCRA time requirements implicate the jurisdiction of this Court; thus, we cannot disregard the requirements in order to address the merits of Appellant's claims. *Commonwealth v. Murray*, 562 Pa. 1, 753 A.2d 201 (2000).

¶ 12 Herein, the November 22, 1999 judgment of sentence became final on December 22, 1999, at the expiration of the period to file a direct appeal. See 42 Pa.C.S. § 9545(b)(3); *Commonwealth v. Carr*, 768 A.2d 1164 (Pa.Super.2001); *see also* Pa.R.A.P. 903 ("[T]he notice of appeal . . . shall be filed within [thirty] days after entry of the order from which appeal is taken."). However, as the instant petition was filed on August 14, 2001, within one year of the July 12, 2001 order revoking his parole and reinstating the balance of his original sentence, we hold that the trial court committed legal error dismissing the petition as untimely.

¶ 13 This Court addressed a similar issue in *Commonwealth v. Anderson*, 788 A.2d 1019 (Pa.Super.2001), wherein the petitioner's probation was revoked following a revocation hearing, and his PCRA petition was filed within one year of the date the new judgment of sentence became final. The petitioner challenged the effectiveness of his trial counsel during the earlier guilty plea. Relying, in part, on *Commonwealth v. Weimer*, 756 A.2d 684 (Pa.Super.2000), we reasoned that the revocation hearing date must be employed when assessing finality under 42 Pa.C.S. § 9545(b)(3) when a petitioner assails the validity of that hearing or the legality of the sentence imposed therein. Our analysis focused on the legislature's intent to provide collateral review of revocation proceedings and the fact that a criminal defendant is entitled to appeal from a sentence imposed after revocation notwithstanding his failure to appeal the original sentence. *Anderson, supra.* However, since the petitioner in *Anderson* did not raise any allegations challenging the validity of the revocation proceedings or the legality of sentence imposed therein, we held that his petition was untimely.

¶ 14 In *Anderson*, the sentence imposed after probation was revoked differed from the original sentence. We do not, however, believe that *Anderson* should be interpreted to apply only to those instances where a sentence different from the original sentence is imposed. If that were the case, a defendant such as Appellant, who had his parole revoked and had his original sentence reinstated, would have no recourse to collateral review of any irregularities that may have tainted the revocation proceeding. This interpretation flies in the face of the express rationale underlying *Anderson*.

¶ 15 Moreover, as to this issue, we do not discern a distinction between a parole revocation proceeding and a probation revocation proceeding. The rights afforded to criminal defendants during parole and probation revocation hearings are identical. *See* Pa.R.Crim.P. 708. Pursuant to Rule 708, a defendant in a parole or probation revocation proceeding is entitled to a full panoply of rights, including the right to have a speedy hearing, to be present at the hearing, to be represented by counsel, to have the court find of record that he violated a condition of probation or parole, to speak on his own behalf, and to present information and argument relevant to sentencing. In addition, the sentencing court must state the reasons on the record for the sentence imposed and advise the defendant of his appellate rights.

¶ 16 None of these rights is conditioned upon the imposition of a sentence different from the original sentence. Therefore, following revocation, a defendant should be permitted to seek collateral review based on an alleged violation of any of these rights, regardless of whether the subsequently-imposed sentence mirrors the original one. An alternative result would leave defendants without any recourse, because in many cases, the time for seeking such review under the PCRA will have expired by the time the revocation proceedings have occurred.

¶ 17 For the forgoing reasons, we adopt the rationale employed in *Anderson* and allow collateral review, limited to the validity of the revocation proceeding or the legality of the sentence imposed, regardless of whether the court imposed a new sentence or reinstated the original sentence at the conclusion of the revocation hearing.

¶ 18 Appellant filed a PCRA petition implicating the validity of the revocation proceeding within one year of the date of that proceeding; hence, his petition was

timely filed, and this Court has jurisdiction to consider the merits of his appeal.

¶ 19 Next, we find reversible error in the PCRA court's reliance upon *Commonwealth v. Grier*, 410 Pa.Super. 284, 599 A.2d 993 (1991), for support of the proposition that Appellant's ineffective-assistance-of-counsel claim is not cognizable because it arose from a parole revocation hearing and therefore did not implicate the truth-determining process. In *Grier*, a panel of this Court concluded that an ineffectiveness claim based on counsel's failure to introduce evidence at a parole revocation hearing did not implicate the truth-determining process as required under Section 9543(a)(2)(ii) because it did not affect the defendant's guilt or innocence.

■ ¶ 20 However, in reaching its conclusion herein, the PCRA court ignored our Supreme Court's holding in *Commonwealth ex rel. Dadario v. Goldberg*, 565 Pa. 280, 773 A.2d 126 (2001), which declares unequivocally that all constitutionally-cognizable claims of ineffectiveness are reviewable under the PCRA. In *Dadario*, our Supreme Court interpreted the "truth-determining process" language contained in section 9543(a)(2)(ii) as the legislature's attempt to adopt the known Sixth Amendment standard of prejudice discussed in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), rather than its intent to limit the scope of ineffectiveness claims reviewable in PCRA proceedings. Therein, the court stated, "Therefore, if a petitioner claims that he or she was denied the effective assistance of counsel in violation of the Sixth Amendment and Article 1, Section 9 of the Pennsylvania Constitution, Section 9543(a)(2)(ii) of the PCRA allows the petitioner to seek relief." *Dadario*, 565 Pa. at 280, 773 A.2d at 130.

■ ¶ 21 In this case, Appellant's ineffective-assistance-of-counsel claim assails counsel's effectiveness during the ***Gagnon II*** hearing because counsel failed to correct a Commonwealth witness's inaccurate testimony. It is axiomatic that Appellant had a constitutional right to effective representation during that hearing. *See, e.g., Commonwealth v. Tinson*, 433 Pa. 328, 249 A.2d 549 (1969) (constitutional right to counsel at recommitment hearing); *Commonwealth v. Vasquez*, 255 Pa.Super. 545, 389 A.2d 111 (1978) (constitutional right to effective counsel during parole revocation hearing); Pa.R.Crim.P. 708(B) (right to counsel is among array of rights available to defendant at parole revocation hearing). As *Dadario* is dispositive of this issue, we are compelled to find that Appellant's ineffectiveness claim is cognizable on collateral review, and we address the merits of the assertion.

■ ¶ 22 We employ a three-prong test to determine whether counsel provided ineffective assistance. The applicable law is stated as follows:

> To prevail on a claim that counsel was ineffective, Appellant must demonstrate that (1) the underlying claim is of arguable merit; (2) counsel's course of conduct was without a reasonable basis designed to effectuate his interest; and (3) that he was prejudiced by counsel's ineffectiveness, i.e.[,] if not for counsel's ineffectiveness, there is a reasonable probability that the outcome of the trial would have been different. Counsel is presumed effective and Appellant has the burden to prove otherwise.

*Commonwealth v. Bess*, 789 A.2d 757, 762 (Pa.Super.2002) (citations omitted).

¶ 23 Appellant cannot satisfy the prejudice prong. Although Appellant contends that he is entitled to an evidentiary hearing to establish his allegations, we find that the record before us is sufficient to address the claim without a hearing.

*Commonwealth v. Lebo,* 713 A.2d 1158 (Pa.Super.1998) (where record demonstrates that ineffective-assistance-of-counsel claim lacks arguable merit, or that no prejudice resulted, no evidentiary hearing is required).

¶ 24 Appellant asserts that he was prejudiced by the *Gagnon II* court's reliance upon a probation officer's testimony that on September 7, 2000, Appellant was found to have violated an **existing** PFA order when the record is clear that the September 7, 2000 order merely granted Ms. Perry's PFA petition. Appellant continues that counsel's failure to correct the testimony "created a grave doubt about the accuracy of the information that led to [Appellant's] parole being vacated." Appellant's brief at 13. However, no doubt exists. Indeed, notwithstanding the parole officer's testimony, Appellant conceded the truth of the allegations contained in the parole violation petition, to wit, "on or about August 31, 2000, the defendant did abuse, threaten, harass, or stalk Gail Perry...." Lehigh County Adult Probation / Parole Violation Petition, 9/22/00. In fact, the *Gagnon II* court noted, "[apparently] Defendant has conceded the allegations of the petition..." Trial Court Order 10/12/00, at 1.

¶ 25 Thus, since Appellant is unable to demonstrate prejudice, his ineffective-assistance-of-counsel claim lacks merit. *Bess, supra.* If the prejudice prong of the ineffective assistance standard is not met, the claim may be dismissed on that basis alone. *Commonwealth v. Fletcher,* 561 Pa. 266, 750 A.2d 261 (2000).

¶ 26 Order affirmed.

¶ 27 Judge JOHNSON Concurs in the Result.