COMMONWEALTH of Pennsylvania,
Appellee

v.

Raul Maria GARCIA, Appellant.

Superior Court of Pennsylvania.

Submitted May 9, 2011.

Filed June 17, 2011.

Eric E. Winter, Reading, for appellant.

Jonathan H. Kurland, Assistant District Attorney, Reading, for Commonwealth, appellee.

BEFORE: STEVENS, P.J., GANTMAN, and FITZGERALD *, JJ.

OPINION BY STEVENS, P.J.:

This is an appeal from the Order entered in the Court of Common Pleas of Berks County dismissing, without a hear-

* Former Justice specially assigned to the Supe-      rior Court.

ing, Appellant's petition filed under the Post Conviction Relief Act (PCRA), 42 Pa. C.S.A. §§ 9541–46. The PCRA court concluded that Appellant Raul Maria Garcia's PCRA petition was facially untimely, and Appellant, who is a citizen of the Dominican Republic, was not entitled to 42 Pa. C.S.A. § 9545(b)(1)(iii's) after recognized constitutional right exception on the basis of *Padilla v. Kentucky*, —— U.S. ——, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010). We affirm.

The relevant facts and procedural history are as follows: On August 12, 2002, represented by counsel, Appellant entered an open guilty plea to one count of delivery of a controlled substance, 35 P.S. § 780–113(a)(30), and on that same date, the trial court sentenced him to three years of probation. Appellant filed neither a post-sentence motion nor a direct appeal.

Appellant subsequently violated his probation, and on December 23, 2004, a bench warrant was issued for his arrest. In 2009, Appellant was apprehended, and following a Gagnon II hearing,[1] Appellant's probation was revoked. On May 18, 2009, Appellant was sentenced to ninety-one days to twenty-four months in prison.

On April 21, 2010, with the assistance of new counsel, Appellant filed a PCRA petition averring, in relevant part, the following:

6. [Appellant] has been released from state custody and is still serving a sentence of parole.

7. [Appellant] is not a United States Citizen, he is a citizen of the Dominican Republic, but has legally held permanent residence since he was a teenager. [Appellant] has no ties to the Dominican Republic and his wife, children, family and business are all in the United States.

8. [Appellant] is presently incarcerated by the Federal Department of Homeland Security in York County Prison with pending removal proceedings. [Appellant] has been detained for his removal due to his conviction being an aggravated felony and a drug trafficking offense.

9. At the time of his guilty plea, Defense counsel failed to adequately advise [Appellant] of the consequences of his pleading guilty to possession with the intent to deliver.

10. On March 31, 2010, the United States Supreme Court decided *Padilla v. Kentucky*, [—— U.S. ——, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010)]. In that case[,] the Supreme Court found that a criminal defense attorney had an affirmative duty to inform a defendant of the possibility of deportation based on the charge that he was pleading guilty to. The Court found that a criminal defense attorney is constitutionally ineffective for failing to fully counsel a criminal defendant as to the immigration consequences of a plea.

11. In this case, [Appellant] is facing deportation under 8 U.S.C. § 1101(a)(43)(B) as the offense is a drug trafficking offense and therefore an aggravated felony.

12. There is no doubt that the offense was definitely deportable and guilty plea counsel should have been able to inform [Appellant] of this fact.

13. [Appellant] was not informed and/or was not adequately informed of the deportation consequences of his guilty plea. Had [Appellant] been informed of the strong deportation possibilities, he would either have taken the matter to trial or negotiated a different guilty plea.

---

1. *Gagnon v. Scarpelli*, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973).

14. [Appellant] is seeking to withdraw his guilty plea under the Post Conviction Relief Act–42 Pa.C.S.A. § 9541 *et seq.*

15. [Appellant] is eligible for PCRA relief in that he:

a. Is currently on parole–42 Pa. C.S.A. § 9543(a)(1)(i).

b. He received constitutionally ineffective assistance of counsel in not being properly informed of the deportation consequences of his plea–42 Pa.C.S.A. § 9543(a)(2)(ii).

c. This allegation has not been previously litigated or waived. 42 Pa.C.S.A. § 9543(a)(3).

d. This issue was not available for previously litigation as this basis for ineffective assistance was only recently recognized–42 Pa.C.S.A. § 9543(a)(4), and

e. This petition is timely filed in that [it] has been filed within 60 days of March 31, 2010, which was [when] the *Padilla* decision, which announced a new right, 42 Pa.C.S.A. § 9545(b)(1)(iii), [was filed].

Appellant's PCRA Petition filed 4/21/10 at 1–3.

The Commonwealth filed an answer to Appellant's PCRA petition, and by order entered on September 9, 2010, the PCRA court provided notice to Appellant of its intention to dismiss without a hearing pursuant to Pa.R.Crim.P. 907. In its order, the PCRA court indicated that it intended to dismiss Appellant's PCRA petition on the basis it was untimely filed and Appellant did not meet his burden of proving that any of the exceptions to the timeliness requirement applied. Specifically, the PCRA court indicated that the Supreme Court's Opinion in *Padilla* did not create a "newly recognized constitutional right to be applied retroactively." In the alternative, the PCRA court noted that it would find Appellant's issue to be meritless.

Appellant filed a counseled response to the PCRA court's notice arguing that he pleaded and proved he was entitled to Subsection 9545(b)(1)(iii)'s timeliness exception. By order entered on October 4, 2010, the PCRA court denied Appellant's PCRA petition "for all of the reasons set forth within this Court's Order and Notice of Intent to Dismiss dated September 9, 2010." This timely, counseled appeal followed.

■■■ Our standard of review regarding a PCRA court's order is whether the determination of the PCRA court is supported by the evidence of record and is free of legal error. *Commonwealth v. Smith*, 606 Pa. 127, 995 A.2d 1143 (2010). The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record. *Id.*

■■ Before addressing the issues presented on appeal, we must determine whether Appellant's instant PCRA petition was timely filed. Our Supreme Court has stressed that "[t]he PCRA's timeliness requirements are jurisdictional in nature and must be strictly construed; courts may not address the merits of the issues raised in a petition if it is not timely filed."[2] *Commonwealth v. Abu–Jamal*, 596 Pa. 219, 227, 941 A.2d 1263, 1267–68 (2008) (citation omitted). *See Commonwealth v. Monaco*, 996 A.2d 1076, 1079 (Pa.Super.2010) (holding no court has jurisdiction to hear an untimely PCRA petition). It is well settled that "[a]ny and all PCRA petitions must be filed within one year of the date on which the petitioner's judgment became

---

2. In the case *sub judice*, Appellant's PCRA petition was filed on April 21, 2010, and therefore, it is governed by the 1995 amendments to the PCRA, which were enacted on November 17, 1995, and became effective 60 days thereafter.

final, unless one of three statutory exceptions applies." *Commonwealth v. Perrin*, 947 A.2d 1284, 1285 (Pa.Super.2008) (citations, quotations, and quotation marks omitted). "A judgment becomes final at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking the review." 42 Pa. C.S.A. § 9545(b)(3).

In the instant case, Appellant was originally sentenced on August 12, 2002, and he filed neither post-sentence motions nor a direct appeal. Thus, his judgment of sentence became final thirty days later, on September 11, 2002.[3] *See Monaco, supra;* Pa.R.A.P. 903(a) (requiring an appellant to file a notice of appeal within thirty days). As such, Appellant had until September 11, 2003 to file a timely PCRA petition. However, Appellant failed to meet this time constraint in that he did not file the instant PCRA petition until April 21, 2010, which is more than one year from when his judgment of sentence became final.[4] *See Perrin, supra.*

■ This does not end our review, however. As suggested *supra*, this Court will review an untimely PCRA petition if the petitioner has alleged and can prove that one of the following three exceptions in Section 9545 applies:

(i) the failure to raise the claim previously was the result of interference of government officials with the presentation of the claim in violation of the Constitution or law of this Commonwealth or the Constitution or laws of the United States.

(ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or

(iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

42 Pa.C.S.A. § 9545(b)(1)(i), (ii), and (iii). "The petitioner bears the burden to allege and prove [that] one of the timeliness exceptions applies." *Commonwealth v. Leggett*, 16 A.3d 1144, 1146 (Pa.Super.2011) (citation omitted). A PCRA petition invoking one of these statutory exceptions must be filed within 60 days of the date

---

**3.** We acknowledge that Appellant's probation was revoked and a new sentence was imposed on May 18, 2009. However, this Court has held that only in limited situations will a probation revocation and resentencing "reset the clock" for purposes of determining the timeliness of a PCRA petition. *See Commonwealth v. Fowler*, 930 A.2d 586 (Pa.Super.2007); *Commonwealth v. Cappello*, 823 A.2d 936 (Pa.Super.2003); and specially assigned to the *Commonwealth v. Anderson*, 788 A.2d 1019 (Pa.Super.2001). That is, where the issues presented in the PCRA petition relate to the validity of the probation revocation hearing or the legality of the new sentence, then the timeliness of the PCRA petition is calculated using the date when the probation revocation sentence was imposed. *See Fowler, supra; Cappello, supra; Anderson,*

*supra.* However, in the case sub judice, Appellant presents an ineffective assistance claim as it relates to his original guilty plea and sentence. Thus, the revocation of Appellant's probation did not "reset the clock" for PCRA purposes.

**4.** There exists a *proviso* to the 1995 amendments to the PCRA which provides a grace period for petitioners whose judgments have become final on or before the effective date of the amendments. However, the *proviso* applies only to petitions which were filed by January 16, 1997. *See Commonwealth v. Thomas*, 718 A.2d 326 (Pa.Super.1998) (*en banc*). Clearly, Appellant is not entitled to the relief provided by the *proviso.*

the claims could have been presented. 42 Pa.C.S.A. § 9545(b)(2). "This Court has provided that [w]ith regard to an after-recognized constitutional right, ... the sixty-day period begins to run upon the date of the underlying judicial decision." *Leggett*, 16 A.3d at 1146 (quotation and quotation marks omitted).

Here, Appellant contends the claim he raised in his petition meets the exception in Subsection 9545(b)(1)(iii). Specifically, Appellant, a citizen of the Dominican Republic, contends that *Padilla v. Kentucky*, —— U.S. ——, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010), created a new constitutional right that was recognized by the United States Supreme Court after his one-year time limit for filing a PCRA petition had passed and the right has been held to apply retroactively.[5] For the reasons discussed below, we conclude the PCRA court did not err in finding Appellant was not entitled to Subsection 9545(b)(1)(iii)'s timeliness exception on the basis of *Padilla*.

Subsection (iii) of Section 9545 has two requirements. First, it provides that the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or th[e Pennsylvania] Supreme Court after the time provided in this section. Second, it provides that the right "has been held" by "that court" to apply retroactively. Thus, a petitioner must prove that there is a "new" constitutional right and that the right "has been held" by that court to apply retroactively. The language "has been held" is in the past tense. These words mean that the action has already occurred, i.e., "that court" has already held the new constitutional right to be retroactive to cases

on collateral review. By employing the past tense in writing this provision, the legislature clearly intended that the right was already recognized at the time the petition was filed.

*Commonwealth v. Abdul–Salaam*, 571 Pa. 219, 226, 812 A.2d 497, 501 (2002). *See Commonwealth v. Copenhefer*, 596 Pa. 104, 941 A.2d 646 (2007).

Our determination as to whether Appellant's petition falls within the ambit of Subsection 9545(b)(1)(iii) begins with an examination of *Padilla*, in which the petitioner, who was a native of Honduras, faced deportation after pleading guilty to the transportation of a large amount of marijuana in his tractor-trailer in Kentucky. In postconviction proceedings, the petitioner sought to withdraw his guilty plea on the basis defense counsel was ineffective in failing to advise him of the possible adverse immigration consequences of entering a guilty plea and, in fact, counsel misadvised him that he did not have to worry about his immigration status. The petitioner indicated that, had he known that a conviction could lead to deportation, he would not have entered a guilty plea. The Supreme Court of Kentucky rejected Padilla's ineffectiveness claim on the ground that the advice he sought about the risk of deportation concerned only collateral matters, which are outside the scope of representation required by the Sixth Amendment. *Padilla*, 130 S.Ct. at 1481.

The United States Supreme Court accepted the case to determine "whether, as a matter of federal law, Padilla's counsel had an obligation to advise him that the offense to which he was pleading guilty would result in his removal from this country." *Padilla*, 130 S.Ct. at 1478. The

---

**5.** We note that, inasmuch as the Supreme Court filed *Padilla* on March 31, 2010 and Appellant filed the instant PCRA petition on April 21, 2010, we conclude Appellant has

met the initial hurdle of demonstrating he filed his PCRA petition invoking Section 9545(b)(1)(iii)'s exception within the required sixty days. *See Leggett, supra.*

United States Supreme Court began with a discussion of the changes, which have occurred in immigration law, noting that "[t]he landscape of federal immigration law has changed dramatically over the last 90 years ... [and] immigration reforms over time have expanded the class of deportable offenses[, thus] limit[ing] the authority of judges to alleviate the harsh consequences of deportation." *Padilla*, 130 S.Ct. at 1487. The United States Supreme Court, acknowledging that before deciding to plead guilty a defendant is entitled to the effective representation of competent counsel, declined to apply a distinction between direct and collateral consequences to define the scope of constitutionally reasonable professional assistance required under *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *Padilla*, 130 S.Ct. at 1481. The Court specifically stated, "Whether that distinction is appropriate is a question we need not consider in this case because of the unique nature of deportation." *Id.* Further, the Court stated, "The collateral versus direct distinction is ... ill-suited to evaluating a *Strickland* claim concerning the specific risk of deportation. We conclude that advice regarding deportation is not categorically removed from the ambit of the Sixth Amendment right to counsel. *Strickland* applies to Padilla's claim." *Padilla*, 130 S.Ct. at 1482. Thus, the United States Supreme Court clarified the following with regard to a criminal defense attorney's obligation to a client, who is intending to enter a guilty plea:

> When the [deportation] law is not succinct and straightforward ..., a criminal defense attorney need do no more than advise a noncitizen that pending criminal charges may carry a risk of adverse immigration consequences. But when deportation consequence is truly clear, as it was in [*Padilla*], the duty to give correct advice is equally clear.

*Padilla*, 130 S.Ct. at 1483.

Having concluded that there was merit to Padilla's underlying claim of ineffectiveness under the *Strickland* test, and counsel's representation was constitutionally defective in that it fell below an objective standard of reasonableness, the United States Supreme Court remanded the matter for a determination of whether Padilla had been prejudiced by counsel's failure to advise him of the possible deportation consequences of his guilty plea. *Padilla*, 130 S.Ct. at 1487.

With regard to Pennsylvania precedent, the United States Supreme Court's holding in *Padilla* abrogated *Commonwealth v. Frometa*, 520 Pa. 552, 555 A.2d 92 (1989), in which the Pennsylvania Supreme Court held that counsel, in providing adequate assistance to a criminal defendant contemplating a guilty plea, is not required to advise a defendant of the collateral consequences of pleading guilty, including the immigration consequences which may result from the plea.

We conclude that the United States Supreme Court's Opinion in *Padilla* did not recognize a new "constitutional right" as envisioned by our Legislature in enacting Subsection 9545(b)(1)(iii). Rather, *Padilla* clarified and refined the scope of a criminal defendant's long-standing constitutional right to the effective assistance of counsel[6] during the guilty plea process. *See Commonwealth v. Abraham*, 996 A.2d

---

**6.** The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defense." Moreover, Article I, Section 9 of the Pennsylvania Constitution provides in relevant part that "[i]n all criminal prosecutions the accused hath a right to be heard by himself and his counsel...." The Pennsylvania Supreme Court has held that with respect to the right to counsel, Article I, Section 9 provides the same level of protection to criminal

1090, 1092–1093 (Pa.Super.2010), *appeal granted in part*, 607 Pa. 618, 9 A.3d 1133 (2010)[7] ("*Padilla* harkens back to the original *Strickland* concept, adopted by our Supreme Court in *Pierce*, of examining the totality of the circumstances to determine what advice must be given to have a fully informed guilty plea."); *Commonwealth v. Lynch*, 820 A.2d 728 (Pa.Super.2003) (holding the Sixth Amendment guarantees the effective assistance of counsel at all stages of a criminal proceeding, including during the plea process); *Commonwealth v. Hickman*, 799 A.2d 136 (Pa.Super.2002) (holding a criminal defendant has the right to

effective assistance of counsel during a plea process). Because *Padilla* effectively overruled the result of the "collateral consequences" label that the Pennsylvania courts have given to the risk of deportation, we recognize the temptation to conclude that it announces a new constitutional right. However, we conclude that the United States Supreme Court's application of *Strickland* to a new set of facts (counsel's advice regarding the risk of deportation) and its resulting holdings based on current professional standards and expectations, did not establish new constitutional rights.[8] Simply put, the "constitutional

defendants as does the Sixth Amendment. *See Commonwealth v. Pierce*, 515 Pa. 153, 527 A.2d 973 (1987). "[T]he test for counsel ineffectiveness is the same under both the Pennsylvania and federal Constitutions; it is the performance and prejudice test set forth in *Strickland* [.]" *Commonwealth v. Spotz*, 582 Pa. 207, 220, 870 A.2d 822, 829 (2005) (citation omitted). "Applying the *Strickland* performance and prejudice test, ... a properly pled claim of ineffectiveness posits that: (1) the underlying legal issue has arguable merit; (2) counsel's actions lacked an objective reasonable basis; and (3) actual prejudice befell the petitioner from counsel's act or omission." *Commonwealth v. Smith*, — Pa. —, 17 A.3d 873, 883 (2011) (citations omitted).

7. In *Abraham*, this Court reviewed whether counsel was ineffective in failing to inform the petitioner that he would forfeit his teacher's pension upon pleading guilty to indecent assault, thereby rendering his guilty plea unknowing. Drawing upon the United States Supreme Court's analysis in *Padilla*, this Court concluded that counsel was obliged to warn the defendant that forfeiting his pension would be a consequence of pleading guilty. In so holding, we noted that, in *Padilla*, the United States Supreme Court stated it had never applied the distinction between direct and collateral consequences to define the scope of constitutionally professional assistance required under *Strickland*. We then concluded in *Abraham* that it was unclear whether the direct/collateral analysis is still viable as it relates to issues concerning the ineffective assistance of counsel. *See Abraham*, 996 A.2d at 1092. On April 5, 2010, the Pennsyl-

vania Supreme Court granted allowance of appeal in *Abraham* to address, *inter alia*, "whether in light of *Padilla* ... the distinction in Pennsylvania between direct and collateral consequences to define the scope of constitutionally 'reasonable professional assistance' required under *Strickland* ... is appropriate?"

8. Certainly, there are numerous instances when the Pennsylvania appellate courts have found counsel to be ineffective under the ambit of *Strickland*. *See, e.g., Commonwealth v. Flanagan*, 578 Pa. 587, 854 A.2d 489 (2004) (guilty plea counsel was ineffective in failing to object to a patently defective guilty plea colloquy); *Commonwealth v. Brooks*, 576 Pa. 332, 839 A.2d 245 (2003) (under *Strickland*, counsel's failure to meet in person with the defendant before trial constituted ineffective assistance of counsel); *Commonwealth v. McClellan*, 887 A.2d 291 (Pa.Super.2005) (holding that, under the ambit of *Strickland*, counsel was ineffective in failing to provide, in a timely manner, the identity and opinion of an expert witness who tended to prove the defendant's alibi defense); *Commonwealth v. Corley*, 816 A.2d 1109 (Pa.Super.2003) (holding that counsel's failure to impeach a witness by showing bias was ineffective assistance). Thus, in light of this Commonwealth's extensive history of finding ineffectiveness under *Strickland*, we conclude *Padilla* did not create a new "constitutional right" as is required for application of 9545(b)(1)(iii)'s timelines exception.

right" at issue in *Padilla*, i.e., the right to effective assistance of counsel during the guilty plea process, is not "new;" but rather, was defined in scope under the well-established ambit of *Strickland.* As such, Appellant's attempt to invoke the after-recognized constitutional right exception to the PCRA timeliness requirements by specifically relying upon *Padilla* can afford Appellant no relief.

Therefore, as Appellant's PCRA petition is facially untimely, and he has failed to meet his burden of proof with regard to any of the enumerated exceptions to the timeliness requirement as enumerated in 42 Pa.C.S.A. § 9545, we find the PCRA court properly dismissed Appellant's PCRA petition on the basis it was untimely filed.[9]

Affirmed.

**9.** We note that Appellant claims the PCRA court erred in denying his petition absent an evidentiary hearing. However, it is well settled that the right to an evidentiary hearing on a PCRA petition is not absolute, and the PCRA court may decline to hold a hearing if the petitioner's claims are patently frivolous with no support in either the record or other evidence. *See Commonwealth v. Walls*, 993 A.2d 289 (Pa.Super.2010). Here, we find no abuse of discretion. Moreover, in light of our conclusion that Appellant's PCRA petition was untimely filed, we shall not address his remaining claims.